## W. H. Garland *v.* Estate of W. S. Scott.

15   143
52   452

Where a suit is brought on a due bill signed by an agent, and the answer specially denies the agency, the agent, on being released from personal responsibility by the plaintiff, may be heard as a wit-ness to prove the fact that the money borrowed, for which the due bill was given, was applied to the payment of the debts of his principal.

Equity obliges the proprietor, whose business has been well managed, to comply with the engage-ments contracted by the manager (*negotiorum gestor*) in his name, and to indemnify him in all per-sonal engagements he has contracted in the management of his affairs.

The action arising out of a *quasi contract*, like the action of mandate, partnership and *negotiorum gestor*, is prescribed by ten years.

A due bill is a mere acknowledgment of a debt, and the promise to pay money being only implied, it does not fall within the definition of a promissory note, and cannot be prescribed as such by five years.

Statutes of prescription and limitation cannot be extended from one action to another, nor to analogous cases beyond the strict letter of the law.

APPEAL from the District Court of the Parish of Carroll, *Farrar*, J. *Short & Parham* and *L. M. Day*, for plaintiff and appellant. *Sparrow & Montgomery*, for defendant.

MERRICK, C. J. This suit is brought upon an instrument in these words :

"Due *Wm. H. Garland, Esq.*, nineteen hundred dollars, borrowed money. New Orleans, July 22d, 1853.

"$1900.          (Signed)          WM. S. SCOTT, U. S. M.
                                   CHAS. A. LABUZAN."

The defendant, the administratrix of *Scott*, denies, in her answer, the agency of *Labuzan* to borrow money and sign the due bill, and avers that he had no authority to perform said acts ; she denies, generally, each and every other alle-gation in the petition, and pleads the prescription of three and five years.

The intestate, *W. S. Scott*, was the Marshal of the United States for the East-ern District of Louisiana, from 1849 to 1852, inclusive. Consequently, his office had expired when the due bill was given.

In 1849, *Scott*, as Marshal, appointed *Labuzan* as his principal deputy, and executed a power of attorney, wherein, among other things, he authorized him to make checks and draw money out of any bank or banks, to deposit funds and bills of exchange, &c., in any bank, and withdraw the same, and " to adjust, settle and liquidate all accounts, and also to pay off and discharge all claims and demands whatever, outstanding and existing against said constituent."

*Labuzan* was released by the plaintiff, and his deposition subsequently taken, was offered to prove that he acted as the chief deputy of *Scott*; that he acted under the power of attorney ; that he continued to act nearly two years after *Scott's* office had expired, in settling up the old business ; that he signed the note under the power of attorney ; that the proceeds of the note were applied to the payment of *Scott's* liabilities as Marshal, and in settlement of moneys collected under execution ; that $1,200 were applied to an execution and $700 for rent ; that the money was borrowed at two several times, and all embraced in one bill of 22d July, 1853 ; that he managed the collections and disbursements of the office as chief clerk, and was the head of all the business.

This testimony was objected to on the grounds, among others, that no evidence

could be received to add to the power of attorney, already offered in evidence, and that the evidence touching the uses which were made of the money alleged to have been borrowed, was inadmissible under the pleadings ; that the plaintiff having declared upon a note, cannot be allowed to prove any right or demand beyond it.

It appears to us, that the testimony was admissible under the issue in this case. The defendant, in her answer, as already said, specially denied that *Labuzan* was the agent of said *Scott,* in borrowing money and in signing the due bill sued on, and averred that he had no authority.

This issue made it important to the plaintiff to show that the money was borrowed for *Scott* and applied to the payments of his debts.

Again : if it be assumed that the power of attorney is at all doubtful, the construction put upon it by one of the parties with the implied consent of the other, furnishes a rule of interpretation. C. C. 1951.

The testimony having been properly received, we will proceed to consider the other questions in this case.

It is objected in this court, that the instrument sued on does not purport to have been executed by *Labuzan* as *Scott's* agent. It is true that the usual words indicating agency, such as " per," " by," or " for," are not used in the due bill, but it is alleged in the petition, that it was so executed, and the answer impliedly admits that the instrument was intended to bind *Scott* through the agency of *Labuzan,* and the proof establishes the allegation in the plaintiff's petition.

It is further objected, that the power of attorney did not authorize the agent to borrow money or acknowledge a debt, because it was not express and special, and because the power of attorney had ceased when the office of the Marshal, to which it had relation, terminated.

It may, perhaps, be doubted whether the terms " to adjust, settle and *liquidate* all accounts, and also to pay off and discharge all claims and demands whatever, outstanding against said constituent," with the acts of the parties under the same, is a sufficient proof of authority to sign the due bill. But whether it were or not, will not vary the result of the case, for the proof legally admitted in this case, shows that the plaintiff's money enured to the benefit of the intestate. The case, then, presents this dilemma : the due bill was either signed with the authority of *Scott,* or it was not. If signed with his authority, his estate is bound by the terms of the due bill. If not, then the estate is bound, under the action *de in rem verso,* for money turned to the use of the intestate, under the equitable maxim " Neminem opportet alterius damno *locupletari,*" (Dig. 50, 17, 206, De regulis juris ; ibid, 3, 5, 10,) and under Articles 2278 and 2279 of the Civil Code, which are in these words :

" 2228. Equity obliges the proprietor, whose business has been well managed, to comply with the engagements contracted by the manager (*negotiorum gestor*) in his name ; to indemnify the manager in all personal engagements he has contracted, and to reimburse him all useful and necessary expenses."

" 2279. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."

It being thus shown that the plaintiff has a cause of action, it remains to be seen whether it is barred by the plea of prescription of three and five years.

The plea of prescription of three years, cannot prevail, because if *Labuzan* had no authority to borrow money as alleged by the defendant, then the action is not an

action for money lent, because *Scott* did not borrow the money, and the parties were in error, and for the same reason, it was not a matter of account, for there were no mutual dealings between *Scott* and the plaintiff, and the latter only in- tended to part with his money upon the security of the obligation of the for- mer. See *Taylor & Hadden* v.

The action, according to the defendant's version of the affair, arises out of a *quasi contract*, and like the action of mandate, partnership, or *negotiorum gesto- rum*, is prescribed by ten years.

If we consider the instrument executed by *Labuzan*, as a valid instrument, as alleged by plaintiff, it is not prescribed, because it is but a mere acknowledge- ment of a debt, and not a promissory note. There is no express promise on the face of the instrument to pay money. It leaves the law to imply the promise from the indebtedness acknowledged. See Story on Promissory Notes, sec. 14; Chitty on Bills, p. 130, eleventh American from ninth London edition.

As the instrument sued upon does not fall within the definition of a promis- sory note, it cannot be considered as barred by the Act of 1852, for statutes of prescription and limitation, are not extended from one action to another, nor to analogous cases beyond the letter of the law. Trop. 658; *Linton* v. *Wikoff*, 12 An. 886.

The supposition that the contract was immoral, cannot avail the defendant. For if *Scott* had illegally used money collected on execution, as surmised by counsel, it did not make a subsequent contract to borrow money to replace that so used, illegal.

The testimony of *Labuzan* is sustained by corroborating circumstances.

It is, therefore, ordered, adjudged and decreed, by the court, that the judgment of the lower court be avoided and reversed; and that there be judgment in fa- vor of the plaintiff against the said defendant, in her capacity of administratrix, of the *Succession of William S. Scott*, deceased, in the sum of nineteen hundred dollars, with five per cent. interest thereon, from the 22d day of July, 1853, un- til paid, and to be paid in due course of administration. It is further ordered, that said succession pay the costs of both courts.

DUFFEL, J., took no part in this case.