**(101 South. 388)**

**No. 24656.**

**ORLEANS ICE MFG. CO. v. PATORNO.**

(June 27, 1924. Rehearing Denied by Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. Contracts ⬥322(3)—Evidence held to establish nonperformance of contract to drill artesian well.

Evidence *held* to establish defendant's nonperformance of contract to dig artesian well which would furnish per minute stated amount of water free from sand.

2. Contracts ⬥305(1)—Use of well held not to have estopped assertion of claim based upon its insufficiency under contract.

One who had contracted with another for drilling of an artesian well, by attempting to use it when completed and pumping it at the expense of driller in an effort to make it produce water free from sand, *held* not to have estopped himself from asserting its insufficiency under contract.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the Orleans Ice Manufacturing Company against John P. Patorno. Judgment for plaintiff, and defendant appeals. Affirmed.

W. O. Hart, of New Orleans, for appellant.

Emile Pomes, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. In November, 1916, the defendant agreed in writing to drill a well for plaintiff at its plant in this city. The well was to be sunk to a depth of approximately 800 feet, landing in the same stratum from which other wells in this city derive their supply. The defendant guaranteed that, when completed and pumped by an air compressor furnishing 300 cubic feet of free air, the well would furnish at least 600 gallons of water per minute, and that the said water would be of the usual quality of artesian water as found in this city, and free of sand. The price to be paid the defendant for said well was $3,200.

It is claimed by the plaintiff that the well was never finished in accordance with the contract, and this suit is brought to recover of defendant the sum of $2,200, the amount advanced on the contract, and for $434.85 for fuel furnished for pumping the well to test the quantity and quality of the water as provided in the contract, and for the

further sum of $1,000 which it is claimed will have to be expended by plaintiff to get such a well as defendant guaranteed.

The defense is: (1) A denial of any liability to the plaintiff; (2) an averment that the well was completed as per contract; (3) that the neglect of the plaintiff to operate the well continuously was one of the contributory causes to the failure of the well to produce the quality and quantity of water called for; (4) that plaintiff accepted the well, and is therefore estopped. There was judgment for the plaintiff, and defendant appeals.

The case presents only a question of fact, and, as the judgment is so obviously correct, we shall adopt in part the written opinion of the learned trial judge:

"The written contract stipulates that the well when completed and pumped by an air compressor furnishing 300 cubic feet of free air would furnish at least 600 gallons of water per minute, free of sand.

"It is proved that the well, when tested, did not furnish the amount of water required by the contract, and that the water it did furnish was not free from sand.

"A test was made about March 1, 1917; the well having been connected with the ice factory. It had to be stopped, and that water could not be used because of the unusual quantity of sand that came from the well.

"Immediately thereafter defendant worked for one week on the well. He addressed a letter to the plaintiff, authorizing it to pump the well, and to charge him for the steam used to do so; the well to be pumped until good results were shown.

[1] "It is proven that the well was pumped, and no good results were shown; that the fuel used for that purpose amounted to the sum sued for, $434.85. Other attempts were made by defendant to furnish water in the quantity agreed to, free of sand, and those attempts were failures.

"The main defense of defendant is the contention that the well was accepted by Mr. E. L. Stream, vice president and engineer of plaintiff, on or about March 1, 1917. Defendant has failed to sustain this contention. On the contrary, it is positively proved that the well was not then nor ever after accepted.

"The evidence on this point is oral, and that, on behalf of defendant, is at variance with the answer which he filed. In his answer he stated that the well was accepted by Mr. Stream, in writing, but no evidence was adduced of any such letter or writing of any kind.

"The evidence proves that, after filing of this suit, defendant again worked on the well, endeavoring to comply with his contract; his last effort was a failure, and the fact, that after the suit was filed he endeavored to comply with his contract, is conclusive proof that the well was never accepted by Mr. Stream on March 1, as alleged, or on any other day.

[2] "There was a plea of estoppel, filed on the day of argument by defendant, that plaintiff is estopped by its acceptance and use of the well and claiming for extra expense required to operate the well, is not well taken and is overruled.

"It is proved that plaintiff had to have another well dug. It contracted with the Blakemore Construction Company to bore a well similar to the one contracted for with defendant.

"It is proved that plaintiff paid the Blakemore Construction Company for the well they dug, $7,000. They had to do so on account of the advanced price of pipe, material, and labor. In this suit plaintiff sues for $1,000. They cannot recover a larger amount than they claim in their petition. Plaintiff is entitled, under the evidence, to recover the sum of $2,200 advanced to defendant, $434.85 for fuel, and the sum of $1,000 paid to the Blakemore Construction Company for a similar well over the contracted price."

The judgment appealed from is therefore affirmed at appellant's cost.

Rehearing denied by the WHOLE COURT.