(104 So. 377)

No. 24991.

STAMM–SCHEELE MFG. CO., Limited, v. YOUNG et al.

(April 27, 1925. Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. Contracts ⬸315—Formal default not necessary to recover damages for breach of contract to complete well.

Driller having broken contract by not completing irrigation well such as was called for, formal default was not necessary to recover damages.

2. Contracts ⬸322(3)—Finding that irrigation well was not completed according to contract sustained.

In suit for balance due on contract to drill irrigation well, evidence *held* to sustain lower court's finding that plaintiff broke contract by not completing such a well as was called for.

3. Contracts ⬸304(2)—Uncompleted irrigation well held not accepted by attempted use to minimize loss.

Attempted use of irrigation well, not completed according to contract, to minimize loss by breach of contract under which driller could not be held for damages from its failure to furnish enough water to irrigate owners' rice fields, *held* not acceptance of well; owners having urged driller to complete it.

4. Contracts ⬸303(5)—Breach of contract to have irrigation well in operation for 1920 season not excused by owners' refusal to board driller's employees in 1921.

Breach of contract to have irrigation well in operation for pumping seasons of 1920 and 1921 *held* not excused by owners' refusal to board driller's employees under the contract in 1921; the time for completing well having passed.

5. Contracts ⬸228—Owners, contracting for drilling of irrigation well never completed according to contract, held not liable for failure to make first payment.

Where irrigation well was never completed according to contract and received by owners, latter were not liable for noncompliance with provision of contract for first payment when well was completed and tested.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by the Stamm-Scheele Manufacturing Company, Limited, against Eloi Young and another. Judgment for defendants, and plaintiff appeals. Affirmed.

W. J. Carmouche and J. M. Buatt, both of Crowley, for appellant.

R. Lee Garland, of Opelousas, for appellees.

BRUNOT, J. This is a suit for a balance alleged to be due on a contract for drilling an irrigation well and furnishing and installing the machinery necessary for its operation.

From a judgment dissolving the contract, dismissing the suit, reserving to the plaintiff the right to remove its property from defendants' premises, and in favor of Eloi Young and against plaintiff for $6,088.25, with legal interest thereon from April 25, 1920, until paid, and all costs of suit, the plaintiff has appealed.

The sum sued for is $6,112.25, with 8 per cent. per annum interest thereon from July 1, 1920, and 10 per cent. upon said principal and interest as attorney's fees. The cause of action is set forth in article 2 of the petition as follows:

"That on January 21, 1920, your petitioner entered into a contract, a copy of which is hereto annexed for reference, with the said Eloi Young and the said Joseph Thibodeaux, Jr., whereby your petitioner bound and obligated itself to dig a well 300 feet deep on the property of the said Joseph Thibodeaux, Jr., for the price and sum of $12,200.50, upon which

there has been paid and allowed as credits a total of $6,088.25, as shown by the itemized sworn account hereto annexed, leaving a balance due your petitioner of $6,112.25, with 8 per cent interest thereon from July 1, 1920, and 10 per cent. additional as above set forth."

The contract is lengthy, but we think it best to reproduce it in full rather than quote excerpts from it. It is in the following words and figures:

## "Contract.

"This agreement made and entered into on this, the 21st day of January, 1920, at Eunice, La., by and between Stamm-Scheele Mfg. Co., Ltd., a corporation duly organized and existing under the laws of the state of Louisiana, with office at Rayne, La., party of the first part, and Eloi Young and Joe Thibodeaux, Jr., of Eunice, parish of St. Landry, state of Louisiana, party of the second part, witnesseth:

### "First.

"Party of the first part agrees to furnish all drilling machinery, all labor except fireman for the boiler, all tools and fittings, and drill test hole for the party of the second part on vendor's property located about 6 miles S. E. from Eunice, La., parish of St. Landry, state of Louisiana; the party of the first part agrees to furnish all well pipe, or casing, the same to be ten inches inside diameter, and four lengths of sawed strainer, which is approximately eighty feet, and attempt to drill and complete one ten-inch water well for the party of the second part, and further agrees to furnish and equip said well when completed with one number six single or two-stage Stamm pump, fitted complete for a seventy-foot steel pit, and ——— feet of thirty-inch diameter steel pit; said pump to be installed, ready for the belt.

"If the formations penetrated by the test hole are such that, in the judgment of the party of the first part, it would be best to move on some other part of the premises and make other test holes, or if formations should be such that depth of well should be made either more or less, or it should be necessary to make steel pit deeper than stated above, it is expressly understood that party of the first part shall make such changes.

### "Second.

"Party of the second part agrees to furnish at well site, free of any cost to the party of the first part, sufficient lumber and nails for the erection of one derrick 16 feet by 40 feet by 4 feet, said derrick to be erected by party of the first part free of cost to the party of the second part, and to remain the property of the party of the second part when the work is completed; party of the second part agrees to do any and all hauling connected with this contract (or any repair work that may be hereafter done), including the hauling of all of party of the first part's drilling equipment, tools, fittings, repairs, men, etc., from the last job, if within hauling distance by team, or from his railroad shipping point, which is Eunice, to the well site, and to same when work is completed or abandoned; party of second part agrees to board all of party of first part's men used in connection with this contract (or on any repair work that may be hereafter done), and furnish free of cost to party of first part, all fuel and water necessary for drilling and completing the said well and installing the said pit and pump, and if party of first part should incur any expense for any purpose referred to in this paragraph, party of second part agrees to reimburse him for same.

### "Third.

"The price made on this well, and other machinery or property covered by this contract, is based on the well being drilled to a depth of 300 feet; if it is necessary to drill said well to a greater depth than 300 feet, then the sum of seven dollars ($7.00) per foot, for each and every foot that said well exceeds 300 feet in depth, is to be added to the purchase price; however, should it not be necessary to drill said well to as great a depth as 300 feet, then the sum of seven dollars ($7.00) per foot for each and every foot that said well lacks of being 300 feet in depth, is to be deducted from said purchase price.

### "Fourth.

"Party of the first part guarantees said well when completed, including the installation of said pit and pump, to produce not less than 2,000 gallons of water per minute when pumped to its capacity, and further guarantees said well against any defects in workmanship and material for the pumping seasons of 1920 and 1921. Should any part or parts of the Stamm pump prove defective in material or workmanship during the pumping season of 1920, such part or parts are to be furnished free of cost to the party of the second part, f. o. b. Rayne, La., during that length of time.

"Upon any violation of the guaranty, party of the first part may either first improve or repair the pump and well, if feasible, in such

manner as to make possible by it the production of the amount of water aforesaid; or, second, party of first part may drill a new well or wells in succession until a well is furnished in compliance with this contract; or, third, party of the first part may abandon any well or wells at any time and remove and retain all machinery, pipe, well casing, pump and material used in connection with said well or wells (even though such removal destroys such well or wells), and thereby forfeit all right to compensation under this contract, but in such event, party of second part shall be entitled to collect from party of first part all sums paid by party of second part to party of first part, less any amount paid by party of first part for board, fuel, lumber, hauling, etc., as above mentioned.

"Party of first part shall not, in any event have any other or further liability by reason of such failure or failures, or warranties; party of first part shall not in any event be liable, either directly or indirectly, for loss of rice crop (or other crop) or for any injury or damage thereto, or for any loss in connection therewith; party of first part shall not, in any event, be liable by reason of any failure to make or furnish repairs, or by reason of any delays, in complying with any agreement in this contract.

"Fifth.

"The Stamm-Scheele Mfg. Co., Ltd., party of the first part, hereby agrees to manufacture, or buy and furnish to the party of the second part, certain machinery or parts of machinery, appliances, fittings, deep wells and properties in its line, hereinafter enumerated and described as follows: One 16½–21" stroke Giant fuel oil engine equipped with 60" clutch pulley water circulating pump, water circulating tank, one 30-bbl. storage tank, air starter complete, one 12" 5-ply rubber belt for 45 ft. center, belt idler on frame, one wagon tank, and all fittings and connections to erect said engine.

"The said property or machinery is to be ready for shipment and to be loaded free on board the cars of the railroad company at factory where made on or about March 1st, 1920, or as soon thereafter as possible for shipment to Eunice, La., unless prevented by fire, strikes, accidents, delays in transportation or any other causes beyond the control of Stamm-Scheele Mfg. Co., Ltd., in which event party of the second part hereby agrees not to hold Stamm-Scheele Mfg. Co., Ltd., responsible or subject to damages for such delay. If anything is found short, broken, defective or not as specified, notice thereof shall be given in writing to said Stamm-Scheele Mfg. Co., Ltd., within ten days after machinery is received by party of second part, that said party of the first part may correct same. No claim for any material or work done by party of the second part shall be allowed, as party of the first part reserves the right to furnish such material or work. This machinery is to be located and operated in the parish of St. Landry, state of La., near Eunice P. O.

"Warranty—Stamm-Scheele Mfg. Co., Ltd., guarantees said machinery and property shall be as represented herein and of good material and workmanship—to do good work when properly set down and operated. And the party of the second part agrees to test the same within thirty days after received, and if, upon trial, said machinery shall not prove as herein represented the party of the second part expressly agrees to give immediate written notice to the said Stamm-Scheele Mfg. Co., Ltd., of Rayne, Louisiana, and to allow the firm a reasonable length of time, after having received said written notice, to send a man to adjust said machinery, the purchaser agreeing at the time, to give full co-operation together with necessary help.

"The use of said machinery, without giving the written notice as herein provided, shall be deemed and construed an acceptance of same, and conclusive evidence that said property is as herein represented.

"The warranty herein given is not intended, and does not apply, to machinery sold as second hand, but only to new machinery.

"For and in consideration of the aforesaid agreement the party of the second part agrees to receive said machinery and to pay for the same the sum of (twelve thousand one hundred and fifty and No.-100) dollars, and freight from factory where made.

"Sixth.

"Payment on the well and machinery covered by this contract is to be made as follows:

"$2,525.00 when well has been completed and tested.

"$3,550.00 on delivery of engine to party of second part.

"One note for $2,525.00 due Nov. 1st. 1920.

"One note for $3,550.00 due Nov. 1st, 1920.

All notes to bear eight (8) per cent. interest from date until paid.

"Chattel mortgage on machinery.

"In case party of second part could not meet all of 1920 payment said party pay as much as half and said note will be carried on to 1921.

"Seventh.

"And it is further understood and agreed that Stamm-Scheele Mfg. Co., Ltd., do hereby retain the legal title to said above bargained machinery and property until the payment in full of the cash and time installments of purchase money thereof and the cost and attorney's fees that may be incurred in the collection thereof as hereafter provided.

"And it is further agreed, in case the party of the second part shall be in any default, or shall fail or refuse to make the cash payment or payments of the deferred purchase-money notes or any part thereof, and the party of the first part shall place the notes or contract in the hands of a collector, or institute suit to recover the possession of the property, or to enforce a specific performance of the contract, then, in that event, the party of the second part agrees to pay, in addition to the amount agreed to be paid as purchase price, ten (10) per cent. for said collector and attorney's fees for the prosecution of said suit to the party of the first part.

"And it is further agreed that in case of default in the payment of any part of the purchase money, then, and in that event, all of the remaining notes shall become at once due and collectible, and the party of the first part, its agents or attorneys, shall have the right to enter and take possession of the property herein bargained, and the party of the second part agrees not to treat it as a trespass. Any payments made shall be considered rents or damages if full and final payment in cash has not been made.

"In testimony whereof this contract is hereby executed in duplicate, there being no verbal representations, agreements, warranties, or guarantees whatsoever, expressed or implied, except as is expressly contained in the foregoing contract. Stamm-Scheele Mfg. Co., Ltd., by B. J. Knight, Party of the First Part.

Joe X. Thibodeaux, Jr., by Eloi Young, party of the Second part. Witness: Notely Arceneaux.
"Filed 2/16/21. A. J. T. Littell, Dr. Clerk."

The defense is that the contract was breached by the plaintiff because the well was not capable of being used for irrigation purposes during the pumping seasons of 1920 and 1921; that it did not supply the flow of water guaranteed; that it was not perpendicular, but was crooked and incapable of being washed out and kept free of sand; and

that, by reason of these defects in material and workmanship, the well was worthless for the purposes intended.

The obligation of plaintiff under the contract was to dig a well 300 feet deep, with a casing of 10 inches inside diameter and to install it with all necessary machinery complete, in time for the pumping season of 1920 and 1921; the well to have a minimum capacity of not less than 2,000 gallons of water per minute.

The sole question to be determined by the court is whether or not the plaintiff complied with the foregoing provisions of the contract. This is a mere question of fact.

The facts as disclosed by the testimony are that the well was not tested, as to its capacity, until after the institution of this suit; that the well was never actually completed by plaintiff, according to the terms of the contract; that it never produced the volume of water guaranteed; that plaintiff ceased work thereon on August 2 or 3, 1920; that the well could not be used for the purposes intended during the pumping season of 1920 or 1921; and that defendants therefore refused to execute the notes called for in the contract.

[1] The lower court reached the conclusion that plaintiff had breached its contract in not delivering such a well as the contract called for. We concur in this view, and we are also of the opinion that a formal default was not necessary. Chattanooga Car Co. v. Lefebvre, 113 La. 487, 37 So. 38.

[2] The substance of the testimony of plaintiff's skilled expert, Mr. Cyrille Richard, is that on July 13, 1920, he found the well had been sinking, and had sunk about 22 inches. When he first went to the well he found the depth to be 251 feet; that he had orders from the field foreman of the plaintiff to cement the well to keep it from sinking, and, if possible, to shut off the sand; that his efforts did not result in any apparent improvement; that he went down into the well

with a straight test pipe, but when the test pipe came out of the well two joints of this pipe were crooked; and that, when he was called off of the job, the well was in bad condition and he was satisfied that it would not meet the requirements or purposes for which it was drilled.

Plaintiff's witness Frank Perkins testified that the drilling of the well commenced about May 8, 1920, and was completed on June 4, 1920; that thereafter the machinery was installed by other persons, but he was called back to the well about June 29, 1920, because of trouble with it; that he remained there two or three days and then turned the work over to Mr. Cyrille Richard.

It must be remembered that these are plaintiff's witnesses, and from their evidence it is clear that the well in controversy was not completed according to the express intention of the parties or as is called for by the contract. It is therefore unnecessary to review any other testimony offered on this point.

[3] The testimony shows that defendants urged the plaintiff to complete the well and that they attempted to use it in order to minimize their loss, as under a clause of the contract plaintiff could not be held for damages resulting from the failure of the well to furnish sufficient water for the irrigation of their rice fields. Under these circumstances, this attempted use of the well does not constitute an acceptance of it.

[4] The contention that defendants breached the contract because of their refusal to board plaintiff's employees, in 1921, may be compared to the act of a drowning man grasping at a straw, and is therefore dismissed as unworthy of serious consideration, because the pumping season of 1920 had passed, and plaintiff's contract was to have the well in operation for the season of 1920 and 1921.

[5] The payment made by Eloi Young was not in conformity with the terms of the contract. The payments thereunder were to be made as follows:

"$2,525.00 when well has been completed and tested.

"$3,500.00 on delivery of engine to party of second part.

"One note for $2,525.00 due Nov. 1st, 1920.

"One note for $3,550.00 due Nov. 1st, 1920."

The well was not tested by the defendants because it was never received by them, and hence they cannot be held for a noncompliance with that provision of the contract.

We are of the opinion that the judgment appealed from is correct and that the authorities cited by the district judge in support of his conclusions in this case are decisive.

The judgment is therefore affirmed, at appellant's cost.