**MILLER v. KROUSE et ux.**

No. 5533.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

A. S. Drew, of Minden, for appellants.

Kennon & Kitchens, of Minden, for appellee.

TALIAFERRO, Judge.

Plaintiff is a resident of the State of Texas. He formerly resided in Webster parish, La., the domicile of defendants, Emmitt L. Krouse and wife, in whose home he lived practically the entire period from the latter part of the year 1919 or early 1920, until March 1, 1933, on which date he removed to the State of Texas and established a new residence with Tom Miller,

a cousin. On October 31, 1936, defendants instituted an in rem suit against him in the district court for Webster parish to recover an alleged balance of $1974.45 on account. Debits on this account consist of:

| | |
|---|---|
| 11½ years' board at $240.00 per year (covering from September 5, 1920, to March 1, 1933) | $2,760.00 |
| February 25, 1926, terracing 40 acres of land | 160.00 |
| August 1, 1927, repairing house, covering crib and furnishing tin roofing | 47.00 |
| March 20, 1928, price of wire and labor to erect fence | 62.00 |
| February, 1934, clearing 7 acres of land at $5.00 | 35.00 |
| Total | $3,064.00 |

Credits on the account follow:

| | |
|---|---|
| April, 1925, by check | $ 100.00 |
| October 1, 1925, proceeds bale of cotton | 97.00 |
| October 5, 1927, proceeds bale of cotton | 67.95 |
| April 4, 1928, by check | 100.00 |
| July 1, 1929, by check | 500.00 |
| June 4, 1931, net proceeds 1 bale cotton | 28.10 |
| October 8, 1931, net proceeds 1 bale cotton | 26.50 |
| November 1, 1933, net proceeds 1 bale cotton | 50.00 |
| October 1, 1934, net proceeds 1 bale cotton | 60.00 |
| October 16, 1935, net proceeds 1 bale cotton | 60.00 |
| Total | $1,089.55 |
| Difference | $1,974.45 |

Jurisdiction was effected by attaching 120 acres of land in Webster parish owned by Miller. An attorney of the Minden bar was appointed curator ad hoc to represent him and service of process, notices, etc., was had on this officer. He did not answer the suit, nor did he notify Miller of the service on him nor of the pendency of the action.

After legal delays, judgment was rendered for the full amount sued for in confirmation of the default previously entered, which recognized and maintained the writ of attachment. The land attached was ordered sold to pay the judgment. The curator was served with notice of seizure under fieri facias. He then wrote plaintiff and advised him of the situation. This was the first information plaintiff had of the filing of the suit. He immediately came to Minden, parish seat of Webster parish, engaged counsel, and instituted the present suit to liberate himself from the judgment sought to be executed by the seizure and sale of his property. The judgment's legality is attacked and its amendment sought on the following grounds, with others not necessary to mention:

1. That no part of said account was due and owing by the plaintiff; and

2. That he had no knowledge of the filing and pendency of the suit against him.

He further alleged that he had and has a legal and equitable defense to the suit against him which he would have urged had he been aware of its pendency.

In the alternative, he avers that if he was ever due defendants any amount or amounts for board and lodging, work done or labor performed for him, or for his account, such amount or amounts have been more than paid and offset by the credits shown on the account. Second, in the alternative, should this plea of payment not be sustained, then he specially pleads the prescription of one, two, three, five, and ten years in bar of recovery on said account.

A rule nisi issued and, after hearing thereon, a preliminary injunction restraining the sale of plaintiff's property was granted. Defendants filed several in limine pleas and exceptions. All were overruled. They are not urged here and, presumably, have been abandoned.

The allegations of the alternative plea of payment are amplified by amendment to the original petition. The substance of the amendment is as follows: That if he ever was due defendants any amount for work done or labor performed for him or his account or for board or lodging, which he denies, same has been more than compensated by the value of services rendered by him to them while he lived with them, as below described, and by cash money he gave them, to wit:

| | |
|---|---|
| March 25, 1924, by check | $100.00 |
| March 30, 1928, by check | 100.00 |
| July 1, 1927, by check | 500.00 |
| | $700.00 |

and by various other amounts in money given them or their children during said period, the exact dates of which he cannot now recall. He additionally avers that Emmitt L. Krouse invited him to come and live in

his home on or about September 5, 1920, as protection to his wife and young children while he (Krouse) was absent doing work in the oil fields, and that he accepted that invitation; that thereafter, and as long as he lived with them, he regularly worked around and about the Krouse home, chopped and brought in wood, carried water, worked the gardens, picked cotton, and otherwise acted in the capacity of handy man and performed all the chores usually devolving upon such a servant, and this, too, not only during Krouse's absence, but after he ceased to work in the oil fields. He further avers that during all this time no demand was made upon him by defendants to pay any amount for board or lodging nor did they at any time intimate or suggest that his aforesaid services, plus the cash advanced them, did not fully compensate them for the board and lodging furnished him and for any work done by them for his account. He also avers that during said period defendants had the free use of his 120-acre farm, adjoining theirs, and received all the rents and revenues therefrom.

The alternative pleas of prescription are renewed and reurged in the amended petition.

Defendants reaffirm the correctness of the account originally sued on and assert the validity of the judgment assailed by plaintiff as a bar to the relief sought by him. They contend plaintiff agreed on September 4, 1920, to pay them board at the rate of $20 per month. They pray that his demands be rejected and that the sale of his property in satisfaction of said judgment be proceeded with.

There was judgment for plaintiff, as by him prayed for, and defendants have appealed.

Plaintiff's action falls within the provisions of article 614 of the Code of Practice. It reads:

"A judgment may be reversed, if it has been rendered on an attachment against a person absent, and who had no knowledge of the action having been brought against him; if such person show that he was not indebted, either for the whole, or for part of the sum for which the judgment was obtained and his property sold.

"But this action shall be prescribed after two years have elapsed from the date of the judgment."

■ The controlling issue of fact in the case is whether the alleged agreement that plaintiff would pay board has been established by a preponderance of the evidence. The lower court rejected defendants' contention in this respect and sustained the plea of prescription as against the other four charges on the account. We think both rulings correct, with the qualification hereinafter noted. Defendants testified in support of the agreement asserted by them. They say it occurred on September 4, 1920, in their home. They attempt to corroborate their testimony by that of their son who at the time was only six years old. His professed recollection of the details of the agreement is quite remarkable. Only a child prodigy could have done so. Twenty years had passed when the case was tried, yet his memory on the subject was undimmed. His testimony detracts from rather than adds strength to that of defendants. Plaintiff, of course, denies the alleged agreement. The circumstances of the case and every reasonable inference arising therefrom tend to support his position. In addition to this, the day he left defendants' home (at which time they were all friendly), defendants were asked specifically by Tom Miller if plaintiff was in debt to them or to anyone else, and they answered in the negative. That defendants gave this answer is testified to by three or four witnesses present at the time. We detect that the account carries no charge for board for the year 1931 to 1932. For each year, excepting this one, there is a separate charge of $240. Also the credit by check of $500 appears entered on the account as of July 1, 1929, whereas it was delivered to defendants two years prior. The seven acres of land was cleared in 1932, but charge therefor appears in the account as of February, 1934.

These glaring omissions and errors would not have occurred had the account been in the making as defendants contend. All of this goes far toward warranting the conclusion that the account did not come into existence as a result of entries thereon regularly and chronologically made by Krouse, as by him testified, but that it was made up by him after Miller ceased to live in his home and he had abandoned hope of him returning from Texas.

It is conceded that there was no agreement whatever by plaintiff to pay board when he took up his abode with defendants in the latter part of 1919 or the early part of 1920. It was evidently the thought of all that the services he would render as

protector and handy man would be adequate compensation for his board and lodging. Krouse continued to work in the oil fields until sometime in the year 1925. As to whether plaintiff should pay board to this time, Krouse testified:

"I said as long as I am working off and you are staying here, I feel I owe you and you don't owe me for staying here."

Notwithstanding this declaration of attitude, Krouse would have us believe that soon thereafter plaintiff voluntarily agreed to pay board even for most of the period Krouse was absent in the oil fields. The record discloses that plaintiff, who is a bachelor and some 63 years old when this case was tried, habitually lived with friends and kinsman and was decidedly averse to paying cash for his board and lodging. He usually worked therefor and, this being true, it is difficult to believe he would have voluntarily obliged himself to pay defendants board for three or four years unnecessarily.

■ When plaintiff took abode with the defendants, he had a substantial amount to his credit in two banks. This was augmented thereafter by the price of mineral leases and the sale of timber. He also owned, free of encumbrance, the 120-acre farm attached. He advanced to Mrs. Krouse the $500 shown on the account to pay for 40 acres of land she purchased. He advanced to her two checks of $100 each, credited on the account, to enable her to make purchases for herself or the children at times when it appears the family fisc was depleted of cash. He loaned Krouse small amounts in cash. He performed all of the labor and services alleged by him in the amended petition, and we are convinced no demand was ever made upon him definitely to pay the alleged balance on the account prior to filing suit against him. Defendants contend such a demand was made just before he went to Texas, but as they expected his early return therefrom and understood he was only making a brief visit over there, not much credence can be put in this contention. When asked why they waited so long to demand payment of the account defendants replied that it was because plaintiff had often promised them that at his death they would inherit all h's earthly goods. They did not care to offend him and run the risk of losing the inheritance. It is likely that plaintiff did hold out to defendants some hope of being made his sole heirs, and it is most probable that when they became convinced he was not going to resume residence with them, and the suspicion that his Texas kinsman would supersede them in his affections ripened into conviction, they conceived the idea of proceeding against him in the manner herein related.

■■ The charges on the account for work done are clearly prescribed under article 3534 of the Revised Civil Code. This article limits action for work to one year. Recovery of the price of roofing and wire, we are inclined to think, is only barred by the prescription of ten years established by article 3544 of the Revised Civil Code. This article establishes a general rule of prescription of ten years as regards all personal actions not specifically covered by other prescriptive provisions of the law. If the relation of the parties and the facts of the case were such as to induce a quasi contract between them, action to recover the price of the material is barred only by the prescription of ten years. Greenfield Box Company v. Box Manufacturing Company, 163 La. 86, 111 So. 608; Garland v. Estate of Scott, 15 La.Ann. 143.

■ However, as regards the price of the material, we think the plea of payment good. Plaintiff advanced the $500 subsequent to the purchase of the material and, as there seems to have been no definite agreement as to how it should be repaid or as to which obligation of plaintiff it was intended to apply as credit, if any, imputation to the discharge of due and liquidated debts and obligations may be made. Revised Civil Code, art. 2166. More properly speaking, the rules governing compensation would apply. Revised Civil Code, art. 2208.

■ Defendants argue that plaintiff's promise to institute them his sole legatees automatically suspended the current of prescription on all amounts due by him to them, and cite several cases wherein this principle has been recognized and applied by the courts. But in all these cases the promisor had died and the disappointed promisees were seeking to enforce their rights against a succession or legatees. Here, the promisor is alive. No one now knows what disposition he will make of his property by will or otherwise, nor is it known who his legatees, if any, will be. Neither is it known that defendants will survive him. We are sure for these reasons prescription was not suspended. Somewhat in contradiction of this position, defendants in their suit against plaintiff alleged that the account sued on

"is long past due and wholly unpaid, other than the credits therein enumerated; and that demand has been made" for payment thereof. It might be pertinently asked: When did the account become due? When did the respective charges thereon become exigible? The usual rules of law pertinent to such matters must be applied, it seems to us, and when this is done, defendants' position becomes obviously untenable.

Defendants did not reconvene nor did they alternatively seek to recover for board and lodging on a quantum meruit. Whether any amount be due them on this account, it is unnecessary now to say. But having sued specifically on a contract, the proof of which has failed, no recovery whatever may be had for board and lodging in the present case.

Plaintiff, having proven that he had no knowledge of the filing of suit by defendants against him until after judgment had been therein rendered, and that he owes no part of the account sued on, the basis of said judgment, is entitled to the relief vouchsafed by article 614 of the Code of Practice, quoted supra.

For these reasons, the judgment appealed from is affirmed, with costs.

DREW, J., recused.