118 So.2d 419 (1960)
239 La. 303
B. F. EDINGTON DRILLING COMPANY, Inc.
v.
Marvin YEARWOOD.
No. 43980.
Supreme Court of Louisiana.
February 15, 1960.
Rehearing Denied March 21, 1960.
*420 Hussey & Smith, Shreveport, for plaintiff-appellant.
Bethard & Bethard, Coushatta, for defendant-appellee.
McCALEB, Justice.
Plaintiff seeks recovery of $3,569.60, allegedy due for services rendered and materials furnished to defendant on two contracts. In May, 1955 defendant engaged plaintiff company to clear out and test an old water well located on his farm in Red River Parish. Plaintiff cleaned out, acidized and swabbed the abandoned well but was unable to cause it to produce water in satisfactory amounts. As a consequence, defendant thereafter made a verbal agreement with Mr. I. A. Mayeaux, Manager of plaintiff company, to drill a new water well on his land. To confirm their understanding, Mayeaux sent defendant a letter, dated June 21, 1955, setting forth the details of the agreement, and work on the new well, which was to cost defendant $3,800 exclusive of an engine or motor for the pump, was begun immediately.
The new well was completed shortly thereafter but defendant never used it nor did he ever pay plaintiff for the materials furnished and services performed in drilling the well or for acidizing and testing the old well. In fact, defendant informed Mayeaux that he did not have the money to pay for either job and that Mayeaux should salvage what he could. Thereupon, the pump from the well was removed by plaintiff and, in a bill sent defendant on July 15, 1955, for the sum demanded in this suit, defendant was allowed a $1,000 credit for this pump.
In September of 1955 plaintiff sent another employee, Mr. H. C. Miller, to collect the bill. Defendant informed Miller that he planned to make a settlement with plaintiff in a week or so but the settlement was never made. In May 1956, plaintiff brought this suit to enforce payment on defendant's contractual obligations.
Defendant admitted in his answer that plaintiff contracted to drill and complete a water well on his land for $3,800 but he denied liability on the ground that plaintiff had breached the contract in failing to equip the well as specified in its letter of June 21, 1955 and further that the well failed to produce the quantity of water specified in the agreement. He also admitted that he engaged plaintiff to clear out and test the old water well on his land but he denied indebtedness to plaintiff for $498, the sum claimed for that service.
After a trial on these issues, judgment was rendered in plaintiff's favor for $458.10, which represented the amount charged by plaintiff for cleaning and testing the old well, less $30.90, the cost of acid charged to defendant, which the judge found that plaintiff had failed to prove was used in the well. In all other respects the judge rejected plaintiff's demands, holding that plaintiff had breached the contract to drill and complete the new well because it had substituted another brand of screen for the brand stipulated in the contract and also substituted a different pump from the one it had specified. Plaintiff has appealed.
The letter of June 21, 1955 written by Mayeaux to defendant reads as follows:
"This will confirm our conversation concerning a irrigation well for your farm near Caspiana, La.

*421 "We propose to drill with a 28" bit through the sand and gravel formation we expect to encounter at approximately 80 feet. We will then install 20 feet of 12" Stainless steel Bar-Lug screen, gravel pack the screen and develope the well ready for the pump.
"We will then install a Deming Fig. #4700 Turbine pump complete with discharge head, 50 feet of 8 × 1 column and shafting, 2 stage 10" bowl assembly, and 2 to 3 ratio right angle drive, to produce 1000 gpm, for the sum of Three Thousand Eight Hundred Dollars ($3,800.00) This price does not include an engine or motor.
"If this is your understanding please sign below, in space provided, and return a copy to us. * * *"
Defendant claims that he signed a copy of this letter and mailed it to Mayeaux, who denied he received the signed copy. However, it is unimportant whether the signed copy was delivered or not, as Mayeaux admits in his testimony that the letter sets forth the contract as he understood it. Accordingly, although plaintiff's counsel apparently contend here that the agreement was a verbal one, we consider the letter to be the contract between the parties.
Defendant contended below, among other things, that plaintiff breached the contract because it guaranteed that the new well would produce 1000 gallons per minute whereas the evidence, while in conflict as to the exact amount of water produced by the well, admittedly showed that, at best, the well would produce not more than 700 to 800 gallons.
Plaintiff, on the other hand, asserted that it did not guarantee that the well would produce 1000 gallons per minute and its witness, Mayeaux, testified that he only guaranteed that the Deming Turbine pump would be capable of producing 1000 gallons per minute. Defendant testified to the contrary, stating in effect that he was more interested in the amount of water the well would produce for irrigating his farm and not in the capacity of the pump.
Since the verbal agreement had been reduced to writing, parol evidence as to the intent of the parties was not relevant if the agreement clearly expressed their intent. Article 1945 of the Civil Code. The letter of Mayeaux set forth that plaintiff would install a pump "* * * to produce 1000 gpm, * * *". We regard this proposal as ambiguous for the reason that it may mean that the pump has the capacity to produce 1000 gpm or it well may mean, as defendant contends, that the well would produce that much water. When the intent of the parties is doubtful, certain cardinal rules for the interpretation of contracts are provided by our Civil Code. One of these rules, stated in Article 1957, is that in doubtful cases "* * * the agreement is interpreted against him who has contracted the obligation". And Article 1958 declares that, if the doubt arises from want of necessary explanation which one of the parties ought to have given, "* * * the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
Although plaintiff's counsel seemingly contend that defendant's conduct following the completion of the well shows that the defense made in this case is an afterthought,[1] we think that the rules of interpretation laid down in Articles 1957 and 1958 of the Civil Code govern the case. Since plaintiff, the obligor, wrote the contract *422 and chose to include therein the gallonage to be produced, it was obligated to use words which would clearly indicate that it was not guaranteeing that the well would produce 1000 gallons per minute but only that the pump would be capable of producing that amount. This it did not do and, therefore, we are required by Article 1958 of the Code to adopt the construction most favorable to defendant. It was testified by defendant that he understood that plaintiff would drill a well that would produce 1000 gallons per minute and we think that this understanding of the agreement is reasonable. Orleans Ice Mfg. Co. v. Patorno, 156 La. 989, 101 So. 388; Stamm-Scheele Mfg. Co. v. Young, 158 La. 587, 104 So. 377.
Thus, we conclude that plaintiff is to be held to have guaranteed that the new well would produce 1000 gpm and that, since the well did not so produce, it cannot recover the contract price of the well from defendant.
In addition, counsel for plaintiff have not suggested an adequate answer to the ruling of the trial judge that plaintiff breached its contract because it substituted another brand of screen for the agreed on "Bar-Lug" screen and also substituted an oil lubricated Layne & Bowler pump instead of the stipulated water lubricated Deming pump. The evidence fully supports this finding.
Counsel, in their brief, simply take the position that there has been a compliance with the contract because the pump installed by plaintiff would pump all the water the well would produce. But plaintiff, suing on a contract for the stipulated price, is, in effect, seeking a specific performance to which it is not entitled unless it has shown specific compliance with its own obligations. Article 1913, Civil Code; Pratt v. McCoy, 128 La. 570, 54 So. 1012; Lundy v. S. Pfeifer & Co., 162 La. 355, 110 So. 556; Seeger v. Seeger, 169 La. 611, 125 So. 732; Di Cristina v. Weiser, 215 La. 1115, 42 So.2d 868; Amos v. Waggoner, 229 La. 134, 140, 85 So.2d 58, 60; Simmons v. Cowper, 233 La. 397, 96 So.2d 646.
Counsel also contend in their brief that, since the well did produce 65% of the alleged guaranteed volume of water, plaintiff should be awarded 65% of the contract price because "there inured to defendant's benefit in any event a well which would produce 650 gallons of water per minute instead of 1,000 gallons per minute".
This plea cannot be granted because plaintiff seeks recovery only under its contract and not on a quantum meruit basis. The law is well settled that, when a plaintiff sues on a contract which is shown to have been breached by him, recovery may not be had in that action on a quantum meruit (Mazureau & Hennen v. Morgan, 25 La.Ann. 281; Succession of Piffet, 37 La.Ann. 871; Condran v. City of New Orleans, 43 La.Ann. 1202, 9 So. 31; Dalgarn v. New Orleans Land Co., 162 La. 891, 111 So. 271; Miller v. Krouse, La.App., 177 So. 472; Bouterie v. Carre, La.App., 6 So.2d 218; Mid-State Tile Co. v. Chaudoir, La.App., 77 So.2d 552; McLeod v. Levy, La.App., 78 So.2d 549), unless he has pleaded for such relief in the alternative. Bouterie v. Carre, supra and McLeod v. Levy, supra.
Finally, plaintiff complains of the action of the judge in deducting $30.90 from its bill for services rendered defendant for cleaning out and acidizing the abandoned well on the ground that plaintiff had failed to carry the burden of proof as to the number of gallons of acid used. Counsel say that the bill for cleaning the old well was an account rendered and and that, since defendant made no objection within a reasonable time, a presumption arose that the account was correct as stated.
The fallacy in counsel's position is that this is not a suit on an open account or a stated account but one to recover for *423 services rendered and materials furnished under a verbal contract to clean and test an abandoned water well. Hence, the authorities cited relative to the burden of proof as to accounts where the debtor fails to object within a reasonable time, are clearly inapplicable.
The judgment appealed from is affirmed.
NOTES
[1] Counsel depend on Article 1956 of the Civil Code which declares that "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes the rule for its interpretation". In this case we do not consider defendant's silence as an implied assent by him that the obligation was executed by plaintiff in accordance with its promise.