171 So.2d 764 (1965)
Lyle E. JONES, Plaintiff-Appellant,
v.
Richard A. WHITTINGTON, Defendant-Appellee.
No. 10323.
Court of Appeal of Louisiana. Second Circuit.
January 26, 1965.
Rehearing Denied March 1, 1965.
Writ Refused March 30, 1965.
*765 Dixon & Malsch, Shreveport, for appellant.
Feist & Schober, Shreveport, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
This is an action for damages resulting from breach of contract. After trial an exception of no right and no cause of action was filed on behalf of defendant, which exception was sustained and judgment rendered in favor of defendant dismissing plaintiff's suit. From this judgment plaintiff has appealed.
There is no substantial variation between the material facts alleged by plaintiff and those established on trial of the case. In anticipation of the execution of a farm-out agreement from the California Company, owner of oil and gas leases on two separate forty acre tracts of land in Sabine Parish, the parties to this action entered into a contractual agreement. The contract is evidenced by a letter of date March 7, 1963, signed by defendant and directed to plaintiff, who accepted the agreement contained in said communication under date of March 8, 1963. Under this contract defendant agreed to drill one well on each of the two described tracts of land and to bear the cost of the drilling and completion thereof; plaintiff was to retain a working interest in the completed wells but was required to bear a proportionate cost of any subsequent wells which might be drilled on the lands involved. A pertinent provision of the agreement as to further obligations of the defendant, which also fixed the consideration to be given by plaintiff, reads as follows:
"It is my understanding that the above referred to tracts will be a farm-out from the California Company and I further agree to comply with the requirements set forth by the California Company in their farm-out to you as concerns the drilling of a well on either of the tracts. For the above consideration you agree to assign to me 100% of the working interest acquired by you from the California Company, less and except the 1/8 working interest you retained as set out above." (Emphasis supplied)
By letter dated March 11, 1963, the California Company advised plaintiff as to the general terms which had been approved by the Company as a basis for the proposed farm-out. Plaintiff was required to commence a well on one tract by March 27, 1963, as the result of which operation he would earn the right to ownership of the lease on said tract; he was further required to begin drilling operations on the second tract within fifteen days from the completion or abandonment of the first well, and, upon compliance, would earn the right to *766 ownership of the lease on this tract. California Company reserved an over-riding royalty on the properties involved.
The California Company prepared a farm-out agreement by instrument dated March 19, 1963, which was accepted by plaintiff. On or about March 26, 1963, defendant began operations for the drilling of a well on one of the tracts of land involved, which well was plugged and abandoned as a dry hole on or about April 2, 1963. Thereafter, defendant refused to commence the drilling of a well on the other tract of land included in the agreement. In this suit plaintiff seeks monetary damages represented by the cost of drilling the second well which amount, by stipulation of counsel, has been fixed in the sum of $9,500.00.
Defendant's peremptory exception was predicated upon the contention that plaintiff was without authority to sublease, transfer or assign, in whole or in part, the interest covered by the farm-out agreement without the written consent of the California Company, and that said consent had never been given. Defendant urged the conclusion that plaintiff did not have the capacity nor right to contract with defendant with respect to an obligation to assign the leases on the properties involved.
The first issue presented by this appeal requires a determination as to the correctness of the judgment sustaining defendant's exception.
In a written opinion the district judge held that the farm-out agreement between California Company and plaintiff was an integral part of the contract between plaintiff and defendant; that absent plaintiff's authority in writing from the California Company to make an assignment to defendant in compliance with his obligation, he had no right to attempt to force the defendant to perform his obligations under the agreement. Upon the basis of this reasoning the trial judge sustained the objection and rendered judgment against plaintiff.
We think the reasons advanced for sustaining the exception are obviously erroneous in numerous particulars. First, it must be pointed out that defendant was not a party to the farm-out agreement between plaintiff and the California Company; second, in his contract with plaintiff defendant clearly accepted and agreed to comply with the requirements of the farm-out agreement; third, defendant and his attorney were fully informed of the provisions of the farm-out agreement before defendant began operations in compliance with his contract with plaintiff; and, finally, this is not a suit to force or compel performance but the remedy which plaintiff seeks is a judgment for damages for failure to perform. It may further be noted, so far as the record discloses, that defendant has never demanded an assignment, nor is it established that the California Company would have refused to honor plaintiff's obligations under his contract with defendant if the defendant had complied with his obligations thereunder. Somewhat in the sense of piling Pelion upon Ossa, it is material to observe that plaintiff's rights under his farm-out agreement depended upon defendant's compliance with his obligations, of which fact defendant, unquestionably, was fully aware.
For the reasons noted, we are firmly convinced that the judgment sustaining the exception was erroneous. It would be most inequitable to permit one who has breached a contract to assert his own violation as a defense on the ground that the other party might be unable to perform his obligations which would become due at some future time.
Inasmuch as the case was fully tried, it is appropriate that we consider the issues with respect to the merits and pronounce judgment thereupon.
Defendant urges that plaintiff has sustained no damage and has no right to recover the cost of drilling the well as a proper measure of damages; that, in any event, plaintiff is precluded from recovery *767 of damages by reason of his failure to place defendant in default under the provisions of LSA-C.C. Article 1912; finally, that plaintiff voluntarily remitted defendant's obligation to drill the second well. We proceed to a consideration of these defenses, seriatim.
Counsel for defendant argue that the drilling of a well on the second tract of land would have been a vain and useless undertaking inasmuch as the possibility of production had been geologically condemned by the drilling of two dry holes in the immediate vicinity of the subject property. Even if the validity of this contention should be conceded, it would not serve as a basis for the release of defendant's unqualified obligation. The performance of the obligation to drill which was assumed by defendant under his agreement with plaintiff would have benefited plaintiff to the extent of establishing his good faith performance of the condition imposed by the farm-out agreement with the California Company, even if the well had been unproductive. The only serious question presented on this first contention relates to the measure of damages. As above noted, plaintiff seeks a money judgment predicated upon the agreed cost of drilling the well. We think this measure of damage has been definitely approved by our Supreme Court in the two cases styled Fite v. Miller, and reported respectively in 192 La. 229, 187 So. 650, 122 A.L.R. 446, and 196 La. 876, 200 So. 285. The judgment in the first case overruled defendant's exception of no cause and no right of action and remanded the case for the purpose, inter alia, of receiving evidence as to the damages sustained by plaintiff. With reference to the measure of damages, the opinion contains the following brief but pertinent observation:
"The best criterion will be the amount that it would cost to drill the well to the depth specified."
In the second case, as cited supra, the court gave thorough consideration to the measure of damages based upon the cost of the drilling of a well. The conclusion of the court, which is most appropriate to the identical issue before us, was stated as follows:
"The plaintiff lost the right to have the well drilled by the defendant through his breach of the contract. The value of this right or the act of performance is the amount of money that it would have cost the defendant to drill the well when he should have done so. Therefore, it is our conclusion that the amount that it would have cost to drill the well at the time of performance furnishes a measure for determining the value of the loss or damage which the plaintiff sustained as a result of the defendant's unjustifiable nonperformance or breach of the contract, which deprived the plaintiff of his right to have the well drilled by the defendant. For interesting and informative discussions on this subject see the articles written by Dr. J. Denson Smith and Dr. Harriet S. Daggett of the Louisiana State University Law School, in Volume 11 of the Louisiana Law Review, pages 55, 58 and 83, and the article by Honorable Leslie Moses in Volume XIV, page 81, Tulane Law Review."
Counsel for defendant argue that the Fite cases are no longer reliable authority, and, in support of this argument, they cite, inter alia, Fogle v. Feazel, 201 La. 899, 10 So.2d 695; Godfrey v. Lowery, 223 La. 163, 65 So.2d 124; and Clement v. Sneed Bros., 240 La. 48, 121 So.2d 235.
Examination of the above cited cases discloses that they are inappropriate and readily distinguishable from the case under examination. Both the Fogle and the Godfrey cases provided for termination of the leases involved in the event of failure to comply with the drilling obligation and the agreements involved did not include an absolute obligation to drill. The contractual agreement between plaintiff and defendant, *768 which is the basis of this action, does impose upon the defendant an unqualified and absolute obligation to drill and does not provide merely for forfeiture of the lease. Again, we point out the fact that there was no lease as between the parties to this litigation, and, therefore, a supposed forfeiture, express or implied, cannot be invoked for the benefit of defendant.
The judgment of the Supreme Court in the Clement case was based upon the failure of a meeting of minds. In discussing this point the opinion of the court stated that it could not reach a conclusion favorable to the contentions of either party since neither contention was supported by the agreement. The court further observed that the extrinsic evidence admitted in aid of consideration of the agreement did not satisfactorily disclose "* * * a single mutual intention of the contracting parties." The opinion further cited Jones v. Janes, 156 La. 715, 101 So. 116, to the effect that a contract is not complete unless it evidences a complete expression of the material elements involved in a meeting of the minds of the contracting parties.
We find no merit in the contention that plaintiff is barred from recovery of damages because of his failure to place defendant in default under the provisions of LSA-C.C. Article 1912. Such a conclusion would do violence to the very definite and specific provisions of LSA-C.C. Articles 1931 and 1932, which are clearly applicable under the facts of this case. These articles provide as follows:
"Art. 1931. Active or passive violation
"Art. 1931. A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.
"Art. 1932. Active violation, putting in default unnecessary
"Art. 1932. When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action."
The meaning of the above articles is so plain and explicit that even he who runs may both read and understand. Indeed, the distinction between the effect of active and passive violation of a contract is so clear that for many years our jurisprudence does not appear to have found it necessary even to consider such an issue. An active breach of a contract is in itself a default. A definitive failure or refusal to perform obviates the necessity for a formal demand and entitles the obligee to compensatory damages. In Stamm-Scheele Mfg. Co. v. Young, 158 La. 587, 104 So. 377, the court said:
"The lower court reached the conclusion that plaintiff had breached its contract in not delivering such a well as the contract called for. We concur in this view, and we are also of the opinion that a formal default was not necessary. Chattanooga Car Co. v. Lefebvre, 113 La. 487, 37 So. 38." To the same effect see Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763; Parkerson v. Home Protection Service (1st Cir., 1946, writs denied), La.App. 24 So.2d 256.
The claim of a voluntary remission of defendant's obligation by the plaintiff is a factual question which would require establishment by a preponderance of the evidence. It suffices to say that the record fails to disclose any evidence which could reasonably be accepted as justifying a conclusion of remission.
*769 For the reasons assigned the judgment appealed from is annulled, reversed and set aside, and
It is now ordered, adjudged and decreed that the exception of no right and no cause of action be and it is overruled and judgment is rendered in favor of plaintiff, Lyle E. Jones, and against the defendant, Richard A. Whittington, in the full sum of Nine Thousand Five Hundred and No/100 ($9,500.00) Dollars, with interest thereon at the legal rate from date of judicial demand until paid, and for all costs of both courts.