459 So.2d 1 (1984)
William J. MOSS
v.
Anthony J. GUARISCO, Sr., Sam C. Barbera, Jr., General Motors Corporation, Pontiac Motor Division, Guarisco Motor Company, Inc. and Guarisco-Barbera Pontiac-Cadillac-GMC, Inc.
Nos. 83 CA 0973, 83 CA 0974.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
Rehearing Denied November 21, 1984.
Writ Denied January 25, 1985.
*2 Peter P. Piccione, Lafayette, and John E. Conery, Conery & Breaux, Franklin, for plaintiff.
Nathan A. Levy, Jr., Joseph R. Streva, Jr., and Lawrence Burleigh, Levy & Burleigh, Morgan City, for Anthony Guarisco, Sr.
George H. Robinson, Jr., Liskow & Lewis, Lafayette, for General Motors Corp.
Jerome J. Barbera, III, Thibodaux, for Guarisco-Barbera Pontiac-Cadillac-GMC and Sam J. Barbera.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Appellant, Anthony J. Guarisco, Sr., appeals the decision of the trial court in these consolidated cases for breach of contract brought by appellees, William J. Moss and Guarisco-Moss Motors, Inc.
These cases were previously before this court when Moss appealed the trial court's sustaining of the peremptory exception of no cause of action as to defendants, General Motors Corporation, Pontiac Motor Division, Sam C. Barbera, Jr., Guarisco-Barbera Pontiac-Cadillac-GMC, Inc., and Guarisco Motor Company. The only remaining defendant was Guarisco as to the breach of contract issue. At that time, the suits alleged breach of contract, inducement to breach contract, and illegal conspiracy in restraint of trade. This court affirmed the trial court's ruling and remanded the case solely for trial on the issue of breach of contract of the Moss-Guarisco buy-sell agreement as to Guarisco.[1]

FACTS
Anthony and John Guarisco each owned fifty percent of Guarisco Motors, Inc. in Morgan City, a franchised dealership for Pontiac, Cadillac and GMC. John held the franchise. In early 1978, Pontiac encouraged them to sell the dealership. All contact with General Motors concerning the dealership was handled through the Pontiac division in Memphis, Tennessee.
William Moss, sales manager for Service Chevrolet, Inc. of Lafayette, was interested in acquiring his own dealership and with his employer's permission was looking for one. Moss learned of the possible sale of Guarisco Motors and contacted Anthony Guarisco in early 1978 about purchasing that dealership. At that time, Guarisco advised Moss that the dealership would be for sale in the near future and suggested that he remain in contact. In August, 1978, Moss was informed by Guarisco that he had to buy out his brother's interest before he could formally act. Guarisco did agree to negotiate with Moss in the meantime. Moss then contacted Pontiac regarding the requirements for a transfer of the franchise from Guarisco to him. Pontiac informed him that a formal application accompanied by a written buy-sell agreement between Moss and Guarisco would have to be submitted for approval.
Moss and Guarisco met several times in October to discuss details of Guarisco's sale of the dealership to Moss. These discussions resulted in a formal buy-sell agreement, a copy of which Moss delivered to Guarisco at the dealership on October 18, 1978. Since Guarisco and his brother, John, were to formalize their partition on *3 October 20, thus making Guarisco 100% owner of the dealership, Guarisco signed the agreement on October 19, but dated it October 20, 1978. (The partition was finalized on November 3, 1978.) Moss also submitted documents for the formation of the corporation called for in the buy-sell agreement, but Guarisco never signed them. The buy-sell agreement was recorded in the St. Mary Parish public records on October 23, 1978. In accordance with the buy-sell agreement, Moss deposited $50,000 into Guaranty Bank and Trust Company of Morgan City on October 23, 1978.
Meanwhile, Barbera had been discussing with Guarisco the acquisition of the dealership. On October 13, he met with Pontiac officials in Memphis to discuss the matter. He had a letter of intent from Guarisco, dated October 11, 1978, to sell the dealership to him, Barbera. Apparently, all persons who inquired about the dealership were given similar letters.
On October 20, 1978, Moss telephoned Pontiac to inform them that he had mailed the application that day. The Pontiac zone business manager who handled applications for new dealerships took the call and set up an appointment for Moss to go to Memphis to discuss his qualifications. This Pontiac representative called Guarisco that day to inform him of Moss' application. Guarisco told the representative that he also wanted Barbera to be considered and that application would be submitted soon.
At this point, it is necessary to understand Pontiac's role and the manner in which a franchise is awarded. Pontiac had the absolute right to decide to whom a franchise will be awarded and unless Pontiac approved an applicant, there could be no sale of a dealership to that applicant. All of the parties were aware of this at all times. Normally, however, it was Pontiac's policy to have the present franchise holder recommend the applicant he preferred. If that applicant was acceptable, the franchise was awarded to him regardless of the qualifications of the other applicants. Moss was unaware of this policy and Guarisco's knowledge is unclear. Since Guarisco had also expressed an interest in Barbera, Pontiac returned Moss' application, unopened, on October 23, 1978, and called to inform Moss of their action.
Subsequently, Guarisco went to Memphis to confer with Pontiac. Guarisco told the representative that he had signed a buy-sell agreement with Moss, but he did not consider it binding. Pontiac again requested Guarisco to submit the name of the applicant he preferred. Later, on November 6, Guarisco wrote Pontiac to withdraw Moss' name from consideration and to state his preference for Barbera. Barbera, who was unaware of the Moss-Guarisco agreement, submitted his application and the Barbera-Guarisco buy-sell agreement dated November 17, 1978, to Pontiac. Eventually, the franchise was awarded to Barbera. In January, 1979, Guarisco and Barbera formed a corporation pursuant to their buy-sell agreement and operation of the new dealership was begun.
Moss filed suit on December 22, 1978 against Guarisco after Guarisco refused Moss' written demand for performance of the October 20, 1978 buy-sell agreement. Notice of lis pendens was filed in the St. Mary Parish public records simultaneously with the suit.
In anticipation of acquiring the Morgan City dealership, Moss quit his job with Service Chevrolet effective October 18, 1978. In 1977, Moss earned $31,865.00, had the use of an automobile and its expenses, an expense account, an opportunity to purchase family vehicles at cost and several other benefits. During his employment in 1978, he earned $45,398.00 and had the same benefits. He was unemployed from October 18, 1978 until he opened the Honda franchise in Lafayette known as Moss Motors, Inc. in December, 1979. Since that time, he has added several other franchises to that dealership and has been quite successful. As the result of that success, he has become involved in several other business interests which include the purchase of a condominium in Florida and the possible acquisition of a Jaguar dealership in Florida. At the time of trial, he was negotiating *4 for a Chevrolet dealership in Morgan City.

ACTION OF THE TRIAL COURT
After trial on the merits, the trial court found that the Moss-Guarisco buy-sell agreement was valid and binding and that Guarisco had breached it. Rather than ordering specific performance, the trial court awarded $300,000 damages to Moss and against Guarisco, with interest and all costs. The trial court also awarded attorney's fees to Barbera, as third-party plaintiff. Barbera had filed a third-party demand which entitled him to recover damages from Guarisco only if specific performance had been ordered on the Moss-Guarisco agreement. Guarisco appeals the judgment of the trial court insofar as it relates to the buy-sell agreement. Therefore, the attorney fee award to Barbera is final.

ASSIGNMENTS OF ERROR
Appellant raises the following issues for review on appeal:
1) whether the Moss-Guarisco buy-sell agreement was binding;
2) whether Guarisco, as a party to a contract, should be held liable for the breach of an agreement subject to a condition if fulfillment of the condition is in the power of a third person (Pontiac) not a party to the contract;
3) whether the trial court erred in reconsidering Guarisco's alleged interference with the performance of the agreement, as Guarisco contends this issue was res judicata in view of the previous decision of this court; and
4) whether, if Guarisco is found liable, damages awarded are excessive.

I. AND II.
Appellant contends that the Moss-Guarisco buy-sell agreement was not binding. At trial, he testified that Moss tricked him into signing the agreement. This contention was not raised in his brief. The trial court found that the evidence was to the contrary and, based upon the law and evidence, concluded that it was a valid and binding contract when executed.
The courts are required to give legal effect to all written contracts according to the true intent of the parties. La.C. C.art. 1945. We conclude that the trial court was correct in finding that the buysell agreement was binding. This assignment of error is without merit.
Next, appellant contends that he, as a party to a contract, should not be held liable for the breach of an agreement subject to a condition, where fulfillment of the condition is in the power of a third person (Pontiac) not a party to the contract.
The trial court found that Pontiac did not approve Moss not because he was unacceptable, but rather, because Guarisco preferred Barbera. The trial judge also found that it is Pontiac's policy to accept the preference of the selling dealer if that applicant is otherwise acceptable to Pontiac. Further, there is evidence in the record that Pontiac at one point notified Guarisco that they would not consider Barbera because Moss contacted them first. Shortly thereafter, Guarisco requested that Moss' name be withdrawn from consideration and recommended that Barbera be awarded the franchise.
The fulfillment of the Moss-Guarisco buy-sell agreement was dependent upon two occurrences: (1) that Guarisco recommend Moss receive the franchise and (2) that Pontiac approve his application. The agreement falls within the definition of a contract with a mixed condition under L.S. A.-C.C. art. 2025[2], since fulfillment of the contract was dependent on the will of one of the parties and on the will of a third person. Guarisco's obligation to recommend Moss to Pontiac was a potestative condition under L.S.A.-C.C. arts. 2024, 2034 *5 and 2035.[3] Pontiac's approval of Moss was a suspensive condition as defined in L.S.A.-C.C. art. 2043.[4]
True, nowhere in the agreement was it stated that Guarisco had an obligation to recommend Moss to Pontiac. However, there was no point in making the agreement had the parties not intended that Guarisco make this recommendation. "Every condition must be performed in the manner that it is probable that the parties wished and intended that it should be." L.S.A.-C.C. art. 2037. It is highly improbable that two astute businessmen would engage in such meaningless activity and such a theory is unsupported by the evidence. Therefore, the trial court concluded correctly that Guarisco's recommendation was an essential part of the contract.
Guarisco contends that since the trial court found that there was no contract between the parties that he could fulfill, no breach was possible. Therefore, he argues that he should not be held liable. As previously noted, the reason the contract was not fulfilled was caused by Guarisco's failure to recommend Moss.
"The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it." L.S.A.-C.C. art. 2040. The law does not permit a party whose obligation depends on a condition to allege as a defense the non-fulfillment of the condition where the failure of the condition was caused through his fault. George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (La.1954). To find Guarisco free of liability would allow him to take advantage of his own wrong. This clearly is not the intent of the law and will not be done in this instance. The trial court found that Pontiac did not award the franchise to Moss solely because Guarisco did not recommend Moss. As a result, Moss suffered damage. The trial court found that Guarisco was responsible for those damages. The law and the evidence support the trial court's findings. We agree with these findings. The first two assignments of error are without merit.

III.
Guarisco alleges that the trial court erred in reconsidering his alleged interference with performance of the agreement because the issue was res judicata in light of the prior appellate decision in this case.
Previously, this court remanded the case for trial on the issue of Guarisco's alleged breach of contract. In pertinent part, the opinion stated: "On remand, it will be the task of the trial court to determine whether specific performance of the Moss-Guarisco buy-sell agreement is warranted under the circumstances of the case, should plaintiffs prevail ex contractu against Anthony J. Guarisco, Sr."[5] It is clear that the court found that Moss' petition stated a cause of action for breach of contract against Guarisco and remanded the case for trial on that issue. Thus, the remand was not limited solely to the question of specific performance, but rather the entire breach of contract *6 issue. This court made no judgment on the breach of contract issue. Accordingly, the issue is not res judicata and this assignment is meritless.

IV.
Finally, Guarisco alleges that the damages awarded by the trial court are excessive. He contends that the trial court's award puts Moss in a better position than he would have been in had the agreement been fulfilled. Guarisco argues that Moss' success with the Honda franchise in Lafayette offset any damages Moss may have incurred from not obtaining the Morgan City Pontiac franchise.
Evidence presented at trial did show that Moss' dealership in Lafayette was very successful, much more so than the Morgan City dealership. Moss worked most of 1979 to obtain and set up the Lafayette Honda franchise which began operations in December, 1979. We conclude that Moss would have been unable to take over the Morgan City dealership and start the Lafayette dealership at the same time. Therefore, Moss' damages are limited to the time it took for Moss to earn from the Honda dealership what he would have earned from the Pontiac dealership.
L.S.A.-C.C. art. 1934 provides in part:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived..."
Moss is entitled to recover for any damages he incurred as well as the loss of profits resulting from the breach of contract. The loss of profits must be proven with reasonable certainty and cannot be based upon speculation and conjecture. Moss has the burden of proving damages. See Recherche, Inc. v. Jewelry Jungle, Inc., 377 So.2d 1329 (La.App. 1st Cir.1979), writ denied, 379 So.2d 254 (La.1980).
In 1979, Barbera received in salary, benefits and bonus a total of $81,000. Moss would have received an additional $3,000 in salary under the Moss-Guarisco buy-sell agreement had it been fulfilled. In 1980 and thereafter, Moss earned more through the Lafayette dealership than Barbera earned in Morgan City. There is no evidence, only speculation, that Moss would have done better in Morgan City than Barbera. Damages cannot be awarded on the basis of speculation.
The trial court awarded Moss $300,000 but gave no reasons why it awarded that particular amount. As above stated, we find that the record supports damages in the amount of $84,000 only. Therefore, we find that the trial court erred in its award of damages.
Accordingly, the judgment of the trial court is amended to reduce the amount of the award from $300,000 to $84,000. In all other respects, the judgment of the trial court is affirmed. All costs are to be borne by appellant.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Moss v. Guarisco, 409 So.2d 323 (La.App. 1st Cir.1982).
[2] Article 2025.

A mixed condition is one that depends at the same time on the will of one of the parties and on the will of a third person, or on the will of one of the parties and also on a casual event.
[3] Article 2024.

The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.
Article 2034.
Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.
Article 2035.
The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not valid.
[4] Article 2043.

The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.
[5] Moss, supra, at 334.