ESPLANADE OIL & GAS, INC.,
Plaintiff–Appellant,
Cross–Appellee,

v.

TEMPLETON ENERGY INCOME CORPORATION, Defendant–Appellee,
Cross–Appellant.

No. 88–3713.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1989.

P. Keith Daigle, Halpern & Daigle, Metaire, La., for plaintiff-appellant cross-appellee.

Nancy Scott Degan, Roy C. Cheatwood, Jones, Walker, Waechter, Poitevent Carrere & Denegre, New Orleans, La., for defendant-appellee cross-appellant.

Before CLARK, Chief Judge, GEE and SMITH, Circuit Judges.

CLARK, Chief Judge:

## I.

Esplanade Oil & Gas, Inc. (Esplanade) appeals the denial of relief from Templeton Energy Income Corporation's (Templeton) alleged breach of a letter agreement to purchase certain oil and gas properties. The district court concluded that Templeton was justified in refusing to complete the purchase because a condition precedent contained in the letter agreement was not fulfilled. Templeton cross-appeals the district court's adverse ruling on three other conditions precedent. We reverse on direct appeal and affirm on cross appeal.

## II.

In the Fall of 1985, Esplanade decided to sell its interest in certain oil and gas properties, consisting of mineral leases, wells, and associated equipment (the Properties). Esplanade listed the Properties with a broker, Online Resources Exchange (Online), which contacted Templeton to ascertain whether Templeton would be interested in purchasing them. At the time, Templeton was engaged in the acquisition and management of proven mineral properties, as general partner of an income fund registered with the Securities and Exchange Commission. After conducting an in-house evaluation of the Properties, Templeton sent Online a letter offering to purchase

the Properties for $385,000. Online referred the offer to Esplanade.

Esplanade found the offer generally acceptable but was uncomfortable with several provisions. Esplanade made several changes in the letter, signed it, and returned it to Templeton. Templeton redrafted the letter to include Esplanade's changes and made several revisions of its own. The final draft was sent to Esplanade. No face-to-face negotiations ever took place. On January 15, 1986, Esplanade agreed to the terms of the amended offer and signed the letter agreement.

The letter agreement contained, among other things, the purchase price, a description of the Properties, and seven conditions precedent to closing. One condition, condition 4(c), stated that "[t]here shall occur no adverse material change to the Properties or [Esplanade's] interest therein from the date of this letter to Closing." Templeton drafted the provision, and the parties never discussed it. Another condition, condition 4(b), required the parties to execute a "mutually acceptable definitive Purchase and Sale Agreement...."

Later that month, the price of oil on the spot market dropped from approximately $28.85 to $20.35 per barrel. Neither of the parties had foreseen this development. On February 6, Templeton advised Esplanade that it was no longer willing to close the purchase under the terms of the letter agreement because of the "precipitous drop in the price of oil." The next day, Esplanade wrote a letter to Templeton stating that Esplanade still considered the letter agreement in force and was prepared to go forward with the closing. Templeton responded that the precipitous drop in the price of oil had, in its opinion, "adversely affected" the Properties and that Templeton did not consider it "feasible" to negotiate a definitive purchase and sale agreement as required by the letter agreement. Templeton ceased negotiating.

On March 5, 1986, Esplanade brought suit against Templeton in Louisiana state court for breach of contract. Templeton removed the case to federal district court. Esplanade continued to operate the Proper-

ties until it was able to sell them to a third party, at a lesser price, in September of 1986.

In July of 1987, the issue of liability was tried before the district court. Templeton defended against Esplanade's claim by asserting that five of the seven conditions precedent contained in the letter agreement had not been fulfilled. The district court rejected all but one of Templeton's contentions. The court ruled that the phrase "adverse material change to the Properties" in condition 4(c) was ambiguous and that Templeton's expert testimony placing the risk of an oil price decline on the seller by industry custom was more credible than the expert testimony offered by Esplanade. The court also ruled that, under the circumstances, the term "adverse material change to the Properties" reasonably encompassed a "dramatic decline in the price of oil." The court thus concluded that the letter agreement did not require Templeton to purchase the Properties and entered judgment dismissing Esplanade's suit.

Esplanade now appeals, contending that the phrase "adverse material change to the Properties" referred to changes to the Properties themselves and not to a decline in the value of the Properties resulting from a drop in the market price of oil. It asserts that the letter agreement was binding on the parties and required Templeton to purchase the Properties for no less than the agreed price of $385,000. Because the district court misconstrued the "adverse material change" clause of condition 4(c), we reverse. Templeton cross-appeals, contending that the district court erroneously concluded that three other conditions precedent were fulfilled or should be deemed fulfilled. These correct rulings are affirmed.

### III.

The "[i]nterpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. When the words of a contract are clear and unambiguous and lead to no absurd consequences, no further inquiry may be made into the parties' intent. *Id.* art. 2046. The

fact that one party can, in hindsight, create a dispute about the meaning of a contractual provision does not render the provision ambiguous. The court must give effect to the ordinary meaning of the words and may not create an ambiguity where none exists. *See Commercial Union Ins. Co. v. Advance Coating Co.*, 351 So.2d 1183, 1185 (La.1977).

■ In this case, the district court found an ambiguity where none exists. The letter agreement provides for the purchase of the "Properties" by Templeton. The agreement explicitly defines the term "Properties" as follows:

[A]ll of Seller's right, title and interest in various oil and gas properties listed in Exhibit "A" including, but not limited to, Seller's working interest and net revenue interest in the respective properties stated in Exhibit "A", together with an identical right, title and interest in and to all leasehold estates, contracts, contract rights, materials, production facilities, salt water disposal systems, pipelines, gathering lines and other fixtures, equipment and personal or real property, easements, rights-of-way, and any an all other rights and privileges of Seller associated with the use, ownership and operation thereof. . . .

Exhibit "A" consists of a list of wells and mineral leases with Esplanade's corresponding working interests and net revenue percentages. The letter agreement then states that "[t]here shall occur no adverse material change *to the Properties* . . . prior to Closing" (emphasis added).

The plain meaning of this language is that no adverse material changes were to occur to Esplanade's right, title and interest in the mineral leases and equipment listed in the letter agreement. The district court expressly found that no such changes occurred:

It was undisputed at trial that these properties never *physically* changed, nor did Esplanade's interest in those properties change. The leases remained in effect, the wells continued to produce oil, and the physical equipment located on the wells remained in the same condition

at all times pertinent hereto as they were on January 14, 1986. (emphasis in original)

Nothing in the letter agreement itself hints of any other construction. Nor does the plain meaning of the words lead to absurd consequences. The essential purpose of the price agreement was to fix the value at which the trade would later be finalized. If increases or decreases in market value were to govern, the price term would have been redundant. Therefore, Templeton's attempt to pour new content into the language of condition 4(c) in an effort to avoid what market fluctuations caused to be an economically unwise business decision is unavailing. We conclude that condition precedent 4(c) was fulfilled.

### IV.

Templeton nevertheless argues on cross appeal that the district court erred in concluding that three other conditions precedent were fulfilled or are deemed fulfilled. Templeton urges this court to affirm the district court's judgment of dismissal, based on the non-fulfillment of these other conditions.

■ Templeton contends that the letter agreement was non-binding because the parties failed to execute a "mutually definitive Purchase and Sale Agreement . . . which contains the usual terms and provisions for the purchase and sale of oil and gas producing properties," as required by condition 4(b). Templeton asserts that Esplanade would not have been able to execute such an agreement because Templeton's final form contract would have required Esplanade to warrant that the Properties had the same value at closing as they had when the letter agreement was executed. We disagree.

"A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." La.Civ.Code art. 1772; *see also Moss v. Guarisco*, 459 So.2d 1, 5 (La. App.Ct.1984), *writ denied*, 462 So.2d 1247 (La.1985). In this case, Templeton had "an interest contrary to the fulfillment" of condition 4(b) because the letter agreement

required Templeton to purchase the Properties at a fixed price under what later became adverse market conditions. Also, the district court found that "it was Templeton, not Esplanade, which refused to enter into, or even negotiate a definitive purchase and sale agreement." Therefore, condition 4(b) is deemed fulfilled.

Moreover, Templeton's refusal to negotiate and enter into a final contract cannot be justified on the basis of a disagreement about the form of the final contract. Templeton's breach was based on its dissatisfaction with prevailing market conditions and the purchase price that was unambiguously specified in the letter agreement. It was not based on a dispute about the form of the final contract. While certain matters relating to the closing might have been settled one way or the other, Templeton could not reasonably have tendered any final contract that did not call for the price specified in the underlying letter agreement. For these reasons, Templeton cannot assert the nonfullment of condition 4(b) as a defense to its breach, and condition 4(b) is regarded as fulfilled.

■ Templeton also contends that Esplanade failed to comply with condition 4(e) of the letter agreement. Condition 4(e) required Esplanade to use its "best efforts to obtain and provide title opinions on the Properties to Buyer for its review … prior to closing." Templeton asserts that Esplanade did not, and indeed could not, provide merchantable title or title opinions prior to closing because title work was going on after the scheduled closing date had passed. We reject these contentions.

By its own terms, condition 4(e) did not require Esplanade to provide title opinions prior to closing. It required only that Esplanade use its "best efforts" to provide them. The district court found "that Esplanade used its best efforts to obtain and provide title opinions and updates on the properties to Templeton." Templeton does not challenge that finding.

In addition, the district court found "that Templeton did not repudiate the letter agreement … because of problems with title or title opinions." Templeton repudi-

ated the letter agreement two weeks before the scheduled closing date for economic reasons. Therefore, Templeton cannot now be heard to complain that Esplanade would not have been able to provide merchantable title or proper title opinions before the scheduled closing date. *See Jones v. Whittington,* 171 So.2d 764, 766 (La.Ct. App.), *writ refused,* 247 La. 624, 172 So.2d 703 (1965). We conclude that condition 4(e) was fulfilled.

Templeton next contends that Esplanade failed to comply with condition precedent 4(f), which required Esplanade to "make available to [Templeton] all records relative to the properties for inspection, reproduction and evaluation." Templeton asserts that Esplanade never complied with its requests for copies of certain leases, operating agreements, assignments and releases. We also reject this contention.

The district court found that Templeton repudiated the letter agreement solely for economic reasons. Templeton did not repudiate the agreement because Esplanade failed to make records available. Since Templeton repudiated the letter agreement two weeks prior to closing, Templeton cannot now assert that Esplanade would not have been able to comply with condition 4(f). *See Jones,* 171 So.2d at 766. Condition 4(f) was therefore properly deemed fulfilled.

■ Finally, Templeton argues that it was relieved of any obligation to comply with the letter agreement because of the doctrines of *force majeure* and failure of cause. Templeton asserts that the unforeseen plunge in the market price of oil prior to the scheduled closing date qualifies under the doctrine of *force majeure* as "a fortuitous event that makes performance impossible." La.Civ.Code art. 1873. Templeton also asserts that its principal cause for entering the letter agreement was to obtain an "income stream," which failed by reason of the plunge in the market price of oil. We find these contentions frivolous.

The doctrine of *force majeure* relieves a party of a contractual obligation only when a fortuitous event "makes performance im-

possible." *Id.* In this case, the decline in the market price of oil did not make Templeton's performance "impossible," it merely made Templeton's performance unprofitable. Thus, the doctrine of *force majeure* does not apply. *See, e.g., Schenck v. Capri Const. Co.,* 194 So.2d 378, 379–80 (La.App. Ct.1967).

■ Furthermore, the doctrine of failure of cause does not relieve Templeton of its obligations under the letter agreement. The contract did not provide for the purchase of an "income stream." No such language appears in the letter agreement. Moreover, Templeton's in-house economic evaluations were never made known to Esplanade, nor can Esplanade be charged with presumed knowledge of them. *See* La.Civ.Code art. 1949. Therefore, Templeton "cannot now be heard to complain of lack of cause based on its projections of future market conditions which ... turned out to be incorrect." *Hanover Petroleum Corp. v. Tenneco, Inc.,* 521 So.2d 1234, 1241 (La.Ct.App.), *writ denied,* 526 So.2d 800 (La.1988); *see also Exxon Corp. v. Columbia Gas Trans. Corp.,* 624 F.Supp. 610, 612–13 (W.D.La.1985).

## V.

We conclude that the letter agreement was binding on the parties and required Templeton to purchase the Properties for the agreed price of $385,000. We also conclude that Templeton breached the letter agreement by refusing to close the transaction. We therefore reverse on direct appeal, affirm on cross appeal, and remand with directions to determine damages and enter judgment for appellant.

REVERSED in part, AFFIRMED, in part, AND REMANDED WITH DIRECTIONS.