**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-30383
Summary Calendar

_____



YORKSHIRE INSURANCE CO. LTD., et al.,

Plaintiff-Appellee,


VERSUS

WEATHERFORD U.S., INC.,

Defendant-Appellant.



_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94 CV 3922)

_____

December 27, 1995

Before KING, GARWOOD, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Weatherford U.S., Inc. ("Weatherford"), appeals both a summary judgment in favor of Yorkshire Insurance Co. ("Yorkshire") and the denial of its motion for relief from judgment.  Finding no error, we affirm.

---

[*] Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that rule, the court has determined that this opinion should not be published.

This litigation arises from a serious injury suffered by Raymond Gaspard, who was working on an offshore supply vessel when a cable on a crane broke, causing an accident that cost him both of his legs. Gaspard has filed suit against a number of parties, including Weatherford.

Weatherford's only involvement with the crane was a service call by Henry Davis, a crane mechanic in its employ. Two months prior to the accident, Davis performed two operations on the crane: a static load test and a routine inspection. He had received no formalized training in performing these operations. He had only a tenth-grade education and obtained his knowledge through hands-on experience.

Yorkshire is Weatherford's insurer. Under the terms of the policy, Yorkshire is not obligated to provide coverage for errors of a professional nature, including those stemming from inspection:

> [T]his policy shall not apply to . . .
>
> Any negligence, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the insured in the conduct of any of the insured's business activities. Professional services includes but is not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specification and supervisory, *inspection*, engineering, or data processing services.

(Emphasis added.)

After Gaspard filed suit, Yorkshire initiated this action, seeking declaratory judgment that it had no duty to defend Weatherford. The district court found that Davis's inspection and

2

testing of the crane was an "inspection," excluded from coverage by the insurance contract as a type of "professional service." The court granted summary judgment for Yorkshire. Weatherford then filed a motion for relief from judgment, which the court denied.

## II.

Weatherford raises four issues on appeal regarding summary judgment. First, it contends that the court erroneously found Davis's inspection to be a "professional service" excluded from coverage by the insurance contract. Second, Weatherford argues that even if the contract does exclude Davis's inspection, Yorkshire still has a duty to defend because Gaspard's complaint alleged that Weatherford was liable for reasons other than Davis's inspection. Third, Weatherford maintains that the district court improperly made findings of fact when granting summary judgment. Finally, Weatherford alleges that the district court should have applied Texas rather than Louisiana law.

## A.

In claiming that the contract's exclusion of "professional services" does not include Davis's inspection, Weatherford notes that we look to the intent of the parties to interpret contracts. It then cites to several cases in which courts have defined professional services to exclude the sort of inspection performed

3

by Davis.[1]

Weatherford's argument, however, ignores the fact that the insurance contract before us explicitly defines "professional services" to include "inspections." The best evidence of the parties' intent is the language of the contract. When that language is unambiguous, we need look no further.[2] Nor do the cases Weatherford cites support its conclusion, for in none of those cases did the contract explicitly define "professional services." We therefore conclude that Davis's inspection was a "professional service" explicitly excluded from coverage.

Weatherford also calls our attention to a pending lawsuit, the *Pass* case, in which the plaintiff has made similar allegations against Weatherford. In *Pass*, however, Yorkshire has apparently *assumed* a duty to defend. Weatherford maintains that Yorkshire's conduct with respect to *Pass* demonstrates the parties' intent with respect to the insurance contract. The parties' intent is best

---

[1] *See Hurst-Rosche Eng'rs v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1343 (7th Cir. 1995) (observing that professional services involve "specialized knowledge, labor or skill, and [are] predominantly mental or intellectual as opposed to physical or manual"); *Gulf Ins. Co. v. Gold Cross Ambulance Serv.*, 327 F. Supp. 149, 152 (W.D. Okla. 1971) (defining professional services to mean "work requiring knowledge of an advanced type in a field of learning or science customarily acquired by a prolonged course of study of specialized intellectual instruction as distinguished from training in the performance of routine, manual or physical processes"); *Ætna Fire Underwriters Ins. Co. v. Southwestern Eng'g Co.*, 626 S.W. 2d 99, 101 (Tex. App.SSBeaumont 1981, writ ref'd n.r.e.) (defining the "practice of professional engineering" to mean "any service or creative work, . . . the performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical, or engineering sciences to such services or creative work") (quoting TEX. REV. CIV. STAT. ANN. art. 3271a, § 2(4) (1968)).

[2] *See Esplanade Oil & Gas Co. v. Templeton Energy Income Corp.*, 889 F.2d 621, 623 (5th Cir. 1989) ("When the words of the contract are clear and unambiguous and lead to no absurd consequences, no further inquiry may be made into the parties' intent."); *Andrus v. Police Jury of Parish of Lafayette*, 270 So. 2d 280 (La. App. 3d Cir. 1972) ("Clear and unambiguous policy provisions are to be enforced as written.").

reflected, however, in the explicit definition of "professional services" contained in the contract.[3]

## B.

Weatherford also argues that Yorkshire has a duty to defend because Weatherford is potentially liable to Gaspard for reasons other than Davis's negligence in inspecting the crane.  Davis also performed a static load test on the crane.  Weatherford contends that this test was not an "inspection" and hence was not excluded as a "professional service."  Weatherford also asserts that Gaspard's complaint contains a generalized allegation of negligence that triggers Yorkshire's duty to defend.

We find no merit in Weatherford's argument that the static load test was not an inspection.  The term "inspection" is not defined in the contract, so we assume that it retains its common meaning.[4]  We believe that "inspection," reasonably understood, incorporates testing, at least the sort of testing Davis performed. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1983) (defining "inspection" as "a checking or *testing* of an individual against established standards") (emphasis added).

---

[3] To the extent that Weatherford is attempting to make an estoppel argument, we agree with the district court that Weatherford has not presented any elements of such a claim.

[4] See LA. CIV. CODE ANN. art. 2047 (West 1987) ("The words of a contract must be given their generally prevailing meaning."); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 630 So. 2d 759, 763 (La. 1994) (opining that "intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy"); *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989) (stating that "words used in an insurance contract will be given their commonly prevailing meaning").

Weatherford contends that Yorkshire also has a duty to defend stemming from Gaspard's generalized allegation of negligence against Weatherford. Gaspard alleges that Weatherford is liable for "[a]ll fault and negligence contemplated by La. Civil Code Art. 2315 and all fault and negligence discovered prior to trial or proven at trial."[5] Weatherford argues that Yorkshire has a duty to defend Weatherford against this generalized allegation of negligence.

We disagree. It is well-established that in determining an insurer's duty to defend, "[o]nly the factual allegations of the pleadings are considered." *Complaint of Stone Petroleum*, 961 F.2d 90 (5th Cir. 1992).[6] The only factual allegations Gaspard made against Weatherford are that Weatherford acted improperly in conducting its inspection and testing of the crane.

As a legal matter, Weatherford may be liable for general negligence in its inspection of the crane, for ignoring a duty to warn (irrespective of whether that duty is inherent in Weatherford's contract to inspect the crane), or for a number of other reasons. As a factual matter, however, all of Weatherford's

---

[5] Gaspard also made three specific allegations of negligence:

a.    Improper and negligent inspection of the crane and anti-two block system;

b.    Failing to detect and/or discover problems in the anti-two block system;

c.    Failing to properly test and/or inspect the crane and anti-two block system . . . .

[6] *See also Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988) ("It is only the factual allegations which are considered, however; statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend.").

liability must stem from its inspection and testing of the crane, as it had no other contact with the crane or Gaspard. Thus, Gaspard's generalized allegation of negligence does not create a duty to defend.

### C.

Weatherford contends that the district court improperly made findings of fact by concluding that Davis's services were professional, that the testing he performed was an inspection, and that any duty Weatherford had to warn Gaspard was inherent in its contract to inspect the crane. These contentions do no more than cast the arguments we have already addressed in a different guise. We therefore reject them.

### D.

Weatherford also takes issue with the district court's conclusion that Louisiana law governs this case. Weatherford's brief, however, apparently concedes that whether we apply Texas or Louisiana law makes no difference with respect to the above issues.[7] We therefore do not reach this question.

### III.

---

[7] In its brief, Weatherford states that "[t]he district court concluded . . . that there was no difference between the insurance laws of the two states [Louisiana and Texas]. The district court was . . . premature to decide this issue if the principles were the same in both states. The court should simply have limited its holding to a conclusion that the general principles involved were widely accepted and it made no difference which law was applied *to the issues before the court*." (Emphasis added.)

7

Weatherford contends that the district court improperly denied its motion for relief of judgment pursuant to FED. R. CIV. P. 60(b). We review an order denying such a motion for abuse of discretion. *Vela v. Western Elec. Co.*, 709 F.2d 375, 376 (5th Cir. 1983) (stating that "we reverse only if the district judge has plainly abused discretion"); *Phillips v. Insurance Co. of N. Am.*, 633 F.2d 1165, 1167 (5th Cir. Unit B Jan. 1981) (noting that "our review is limited to whether the district court abused its discretion in denying the Rule 60 motion").

We conclude that the district court's reasons for denying the rule 60 motion were legitimate and not an abuse of discretion. Weatherford sought relief from judgment on the ground that the lawsuit had proceeded to summary judgment so quickly as to impair its ability to obtain evidence and defend the case. The district court rejected Weatherford's argument because Weatherford made no attempt, before summary judgment, to obtain additional time in which to gather evidence and prepare a defense:

> At no time did Weatherford move for a continuance of the motion for summary judgment. The record indicates that the court freely granted continuances on a separate motion for summary judgment in this proceeding. Nor did Weatherford indicate in its opposition that summary judgment was premature because of inadequate discovery.

On appeal, Weatherford offers no explanation for its failure to request a continuance or to delay summary judgment. *See* FED. R. CIV. P. 56(f). We thus find no abuse of discretion.

AFFIRMED.